IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| CONSTRUCTION SERVICES, L.L.C. | PLAINTIFF |
| v. | CIVIL NO. 1:17cv304-HSO-JCG |
| INDUSTRIAL & CRANE SERVICES, INC. | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT INDUSTRIAL & CRANE
SERVICES, INC.'S MOTION [39] FOR SUMMARY JUDGMENT**

BEFORE THE COURT is Defendant Industrial & Crane Services, Inc.'s Motion [39] for Summary Judgment. This Motion is fully briefed. After review of the Motion, the Response, the related pleadings, the record as a whole, and relevant legal authority, the Court finds that Defendant's Motion [39] should be granted in part as to Plaintiff Construction Services, L.L.C.'s unjust enrichment claim, and denied as to Plaintiff's remaining claims.

I. BACKGROUND

A. Relevant facts

Plaintiff Construction Services, L.L.C. ("Plaintiff") "provides its clients workforce solutions, including contingent labor staffing, direct hire, and payroll services."[1] Compl. [1] at 2. Defendant Industrial & Crane Services, Inc. ("Defendant"), is a construction contractor that specializes in large infrastructure construction projects including specialty rigging and heavy lift services, and in

---

[1] Plaintiff states that it is a wholly-owned subsidiary of HKA Enterprises, L.L.C., and was formally known as Cenergy Shipbuilding, L.L.C. Compl. [1] at 1-2.

recent years has "specialized in the port world doing the ship to shore cranes." Mem. in Supp. [42] at 3; Pritchard Depo. [42-4] at 8. Of relevance here, a company known as Kocks Krane, GmbH ("Kocks"), subcontracted with Defendant to assemble and place two new ship-to-shore gantry cargo cranes, manufactured by Kocks, as part of a project in Delaware. Mem. in Supp. [40] at 1-2.

On or about January 31, 2017, Defendant "engaged Plaintiff to procure laborers, ironworkers, and administrative personnel for the Port of Wilmington, Procurement of New Gantry Cranes Project in New Castle County, Delaware" ("Delaware Project"). *Id*. The parties entered into a contract or "Agreement" which set out certain multipliers Plaintiff would apply to the hourly wages Plaintiff paid to the employees it procured for Defendant.[2] *Id*. at 2-6; Agreement [1-2] at 1. The multipliers were for the purpose of covering expenses such as "payroll taxes, workers compensation insurance, general liability insurance, fringe benefits and overhead," with any remaining funds serving as profit for Plaintiff. Agreement [1-2] at 1. Based upon the hourly wage for each employee hired from Plaintiff, Plaintiff would calculate the wages and pay the employees, then bill Defendant. Part of the calculation involved Plaintiff applying the multipliers set forth in the Agreement. Defendant would in turn remit payment of the invoices to Plaintiff. *Id*.

---

[2] Plaintiff designates this single page document as an "Agreement," *see* Compl. [1-2] at 1, while Defendant refers to it simply as a "Rate Sheet," *see* Mem. in Supp. [40] at 2.

2

The employees Plaintiff ultimately procured for Defendant to employ on the Delaware Project worked for varying lengths of time between January and May 2017. May 18, 2017, Letter [1-4] at 1-3. Plaintiff subsequently received a letter dated May 18, 2017, from the Delaware Department of Labor stating that three workers[3] it had supplied for the Delaware Project had not been paid in compliance with "Delaware's Prevailing Wage Law, 29 Del. C. §6960." The Department demanded payment of $111,233.76 to cure the deficiency. Compl. [1] at 1-7; May 18, 2017, Letter [1-4] at 1-3. The three employees had been paid under a classification of "laborers" while performing work as "iron workers." May 18, 2017, Letter [1-4] at 1-3. Plaintiff complied with the demand by remitting the requested payment to the Delaware Department of Labor, and then invoiced Defendant for the additional amount of the employees' hourly wages plus the markup. Compl. [1] at 1-7. The dispute between the parties in this case arose when Defendant took the position that, under the terms of the contract, it did not owe Plaintiff reimbursement for these additional funds. *Id*.

On September 15, 2017, Plaintiff's counsel sent Defendant a demand letter for the amount Plaintiff claimed it was owed, $168,765.09, which included unpaid labor procured in the amount of $161,191.02[4] and accrued interest in the amount of

---

[3] The employees at issue were Arthur Fuggett, Michael Strehlau, and Kieran Vonryik. May 18, 2017, Letter [1-4] at 1-3.

[4] After applying the markup to the deficiency of $111,233.76, Plaintiff invoiced Defendant for $132,735.23. There were eight additional invoices included in the demand which totaled $28,455.79. All nine invoices added to $161,191.02. September 15, 2018 Letter [1-5] at 1-13.

3

$7,574.07. Plaintiff's counsel requested that Defendant send the payment to his office. *Id.* at 4; September 15, 2017, Letter [1-5] at 1-2. In response, on or about October 4, 2017, Defendant sent a check directly to the drop-box for Plaintiff's bank in the amount of $5,974.44[5], together with various documents purporting to proclaim that, should Plaintiff negotiate the check, it would be accepting the check "in full and final settlement" under the terms of the parties' Agreement. Compl. [1] at 1-7; Compl. Exhibit 5 [1-6] at 1-6. It appears that upon receipt of the check, the bank automatically deposited the funds and notified Plaintiff of its receipt of the check and accompanying documents.

On October 5, 2017, Plaintiff's counsel sent Defendant correspondence via "REGISTERED MAIL and ELECTRONIC MAIL" stating that it rejected Defendant's purported payment as full and final satisfaction of the outstanding debt, and advising that, if full payment was not received by October 15, 2017, Plaintiff would initiate legal proceedings. Compl. Ex. 6 [1-7] at 1-2.

B.   Procedural history

1.   Plaintiff's Complaint

Invoking diversity jurisdiction, Plaintiff filed a Complaint [1] in this Court on October 23, 2017, advancing claims against Defendant for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment. Compl. [1] at 1-7.

---

[5] Defendant had responded to Plaintiff's last invoice by correspondence dated September 19, 2017, advising that in its view the only valid outstanding invoices were Invoice 350040 in the amount of $3,314.50 and Invoice 350057 in the amount of $2,659.94, which totaled $5,974.44. September 19, 2017, Letter [1-6] at 1.

4

Plaintiff seeks actual damages of $161,191.02, plus interest at the rate of 18% per annum. *Id*. Plaintiff further seeks recovery of its costs, expenses, and attorneys' fees incurred in pursuing this collection action under the terms of the Agreement. *Id*.; Agreement [1-2] at 1.

    2.    <u>Defendant's Motion [39] for Summary Judgment</u>

        a.    <u>Defendant's arguments</u>

Defendant has filed a Motion [39] for Summary Judgment arguing that Plaintiff has failed to state a claim upon which relief may be granted, or alternatively that its claims have been fully resolved and settled and are barred by the doctrine of accord and satisfaction. Mot. Summ. J. [39] at 1. Defendant asserts that the contract it entered into with Plaintiff set forth a two-step process. In the first step the parties engaged in a selection process by which Plaintiff would present potential employees to Defendant, Defendant would determine which of those individuals to hire for "general helper" positions, and Plaintiff would set the specific hourly rates of pay for each employee.[6] *Id*. At the second step,

> the parties agreed on a "rate sheet" prepared by Construction Services that confirmed the terms and conditions for payment [of] Construction Services' employees, and sending payments to Construction Services. *See* Compl. Ex. 1 [ECF No. 1-2]. This single page document is the only statement of terms between the parties for pay rates and payment

---

[6] Defendant asserts that it and Plaintiff agreed that "[Arthur] Fuggett and [Michael] Strehlau would be paid a base straight-time rate of $15.00/hour and [Kieran] Vonryik would receive $18.00/hour," and that Plaintiff's "willfull ignorance of wage laws" when setting the wage rates does not constitute a breach of contract by Defendant. Thus, Plaintiff should be bound to the terms of the contract. Mem. in Supp. [40] at 9-12. Conversely, Plaintiff contends that Defendant dictated what the hourly wage would be for each employee and should pay the correct wages pursuant to the contract. Resp. in Opp'n [42] at 7-8.

5

> processes. The rate sheet provides for a markup on the hourly wages agreed upon by the parties. The markup rates "include all wages, payroll taxes, workers compensation insurance, general liability insurance, fringe benefits and overhead." *Id*. The rate sheet does not address, in any shape or form, modifications or amendments to the rates, indemnification, or any other contingency. *Id*. The parties moved forward under these terms, and Industrial Services paid each of the invoices presented by Construction Services in due course, without protest or dispute from Construction Services.

*Id*. at 1-3; *see* Agreement [1-2] at 1.

Defendant maintains that the parties "had no agreement for any base hourly wage rates other than those the parties negotiated and incorporated into the rate sheet: $15.00/hour and $18.00/hour; plus the markup established by Construction Services for all of the other pay components, such as fringes, overhead, and the withholdings it decided to include in its fee package." Mem. in Supp. [40] at 7-17. Defendant further argues that there was no agreement to modify these rates, thus Plaintiff's unilateral decision to increase and pay the hourly rates based upon the Delaware Department of Labor's enforcement notice falls completely outside the contract terms. Mem. in Supp. [40] at 7-17. For these reasons, Defendant takes the position that its refusal to pay the last invoice with the recalculated hourly rates for the three employees was not a breach of the "contact terms." *Id*. Defendant also contends that Plaintiff's unjust enrichment claim fails because Plaintiff does not deny that there was a binding written contract between the parties. *Id*. at 12-13.

In the alternative, Defendant maintains that the Complaint must be dismissed because when Plaintiff negotiated Defendant's $5,974.44 check, it accepted Defendant's settlement offer, and this operated to bar Plaintiff's claims

6

under the doctrine of accord and satisfaction. *Id.* at 13-24. Finally, since Plaintiff's claim for a breach of the duty of good faith and fair dealing applies only to the "parties' dispute resolution process," Defendant asserts that it is entitled to summary judgment on this claim based upon accord and satisfaction. *Id.*

      b.    <u>Plaintiff's arguments</u>

Plaintiff responds that summary judgment is not appropriate because Defendant has failed to establish that there exist no genuine issues of material fact regarding whether Defendant breached the contract, failed to act in good faith, or that the doctrine of accord and satisfaction is a valid defense. Resp. in Opp'n [42] at 1-27. Plaintiff maintains that it was unaware, although Defendant was well aware, that the three employees Plaintiff supplied under the Agreement should have been paid $60.19 per hour under Delaware's Prevailing Wage Law. *Id.* at 1. Plaintiff argues that the hourly wages as set by Defendant resulted in the Delaware Department of Labor finding that Plaintiff had underpaid the employees, and led it to order Plaintiff to remit the deficiency in the amount of $111,233.76.[7] *Id.*

When Plaintiff remitted the invoice to Defendant for reimbursement of the deficiency payment, Defendant breached the contract by refusing to pay the total amount invoiced. *Id.* at 17-23. Finally, Plaintiff maintains that the payment which Defendant contends resulted in a settlement does not bar Plaintiff's claims under the doctrine of accord and satisfaction. *Id.* at 17-27.

---

[7] The deficiency calculated by the Delaware Department of labor did not reflect the markup provided for in the contract.

## II.  DISCUSSION

A.  Relevant legal standards

    1.  Summary judgment

"Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir. 2014); *see* Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, a court "view[s] the evidence and draw[s] reasonable inferences in the light most favorable to the nonmoving party."  *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quoting *Cox*, 755 F.3d at 233); *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

Before it can determine that there is no genuine issue for trial, a court must be satisfied that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (the nonmovant must set forth specific facts to contradict the specific facts set forth by the movant, general averments are not sufficient).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine

issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). An actual controversy exists "when both parties have submitted evidence of contradictory facts." *Salazar-Limon v. Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quotation omitted).

2. Relevant Mississippi law

Because this case arises under the Court's diversity jurisdiction, it is governed by the substantive law of the forum state, Mississippi.[8] *State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions., L.L.C.*, 751 F.3d 684, 688 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). A breach-of-contract claim under Mississippi law has two elements: (1) the existence of a valid and binding contract; and (2) a showing that the defendant has broken or breached it. *Maness v. K&A Enters. of Miss., L.L.C.*, 250 So. 3d 402, 414 (Miss. 2018), *reh'g denied* (Aug. 9, 2018).

Mississippi law recognizes that every contract contains an implied covenant of good faith and fair dealing. *Merchants & Planters Bank of Raymond v. Williamson*, 691 So. 2d 398, 405 (Miss. 1997).

> The covenant of good faith and fair dealing holds that neither party will do anything which injures the right of the other to receive the

---

[8] The parties have not disputed that Mississippi law applies and have cited Mississippi law in support of their respective positions. *See* Mem. in Supp. [40] at 7-24; Resp. in Opp'n [42] at 18-27.

9

> benefits of the agreement. *Ferrara v. Walters*, 919 So. 2d 876, 883 (Miss. 2005). It is implied in all contracts. "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992). "Stated differently, '[t]he covenant holds that neither party will do anything which injures the right of the other to receive the benefits of the agreement.'" *Ferrara v. Walters*, 919 So. 2d 876, 883 (Miss. 2005) (internal quotation mark omitted). "Some conduct, such as subterfuge and evasion, clearly violates the duty." *Jones v. Miss. Insts. of Higher Learning*, No. 2016-CA-01050-COA, 2018 WL 3853409, at *6 (Miss. Ct. App. Aug. 14, 2018).

*Wiemer v. Rubino*, 1:16cv99, 2019 WL 187873, *8 (S.D. Miss. January 14, 2019).

The doctrine of "unjust enrichment applies to situations where there is no legal contract and the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another." *Beasley v. Sutton*, 192 So. 3d 325, 332 (Miss. Ct. App. 2015) (quoting *Ground Control L.L.C. v. Capsco Indus. Inc.*, 120 So. 3d 365, 371 (Miss. 2013) (quoting *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005)).

B. <u>Defendant's Motion [39] for Summary Judgment should be denied as to Plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing, and granted as to Plaintiff's claim for unjust enrichment.</u>

    1. <u>Claims for breach of contract and breach of the duty of good faith and fair dealing</u>

Plaintiff maintains that Defendant breached the contract by refusing to remit payment of the final invoice. Conversely, Defendant appears to take the position that Plaintiff was barred by the contract from unilaterally changing the originally agreed-upon base hourly pay rates of $15.00/hour and $18.00/hour to $60.00/hour in response to the Delaware Department of Labor's notice of deficiency. According to

10

Defendant, Plaintiff knew prior to setting the hourly rates that the employees were required to be paid in accordance with Delaware's Prevailing Wage Law. Plaintiff counters that Defendant never informed it that the Delaware Project was subject to the Prevailing Wage Law, that it was Defendant that unilaterally set the hourly rates of pay at an amount far less than required by Delaware law, and that the contract only supplied the multipliers for the hourly rates, not the hourly rates themselves. Resp. in Opp'n [42] at 1.

The parties appear to agree that there does exist a contract, specifically the Agreement/Rate Sheet [1-2]. Review of the relevant portions of this one-page document reveals that it does not address the hourly rate of pay for any employee, only the multipliers to be applied for "Straight Time" and "Overtime" for employees classified as "Admin/Clerical" and "Craftsmen." This observation is not disputed by either party. Instead, Defendant's Motion [39] relies upon 82 pages of Exhibits [39-1] – [39-4] which purport to provide supplemental information not found within the contract. In support of its position that questions of material fact exist, Plaintiff's Response [42] includes 627 pages of Exhibits [42-1] – [42-27].

At least one material fact at issue, among others, is whether Plaintiff knew before the parties entered into the contract on January 31, 2017, that the three employees at issue who worked on the Delaware Project were subject to the Delaware Prevailing Wage Law. Defendant has not produced any documentation on this issue but relies instead upon an alleged discussion that occurred in a chance meeting at an airport between one of Defendant's employees, Charlie McVea, and

two of Plaintiff's employees, Stan Keebler and Wayne Cook. At its Rule 30(b)(6) deposition, Defendant's Vice-President, Chase Pritchard, testified that prior to the parties entering into the contract, Mr. McVea encountered Mr. Cook in an airport and informed Mr. Cook that the Delaware Project was a state project subject to the Delaware Prevailing Wage Law. Pritchard Depo. [42-4] at 45-47.

Mr. McVea, who was Defendant's Chief Operating Officer from 2015 until 2018, testified at his deposition that when he was at the airport on a return trip to Delaware, he ran into Mr. Keebler and Mr. Cook. McVea Depo. [42-6] at 24. Mr. Cook asked if Mr. McVea had any work for him, and Mr. McVea responded "yes," but that it was in Delaware and was subject to Delaware's Prevailing Wage Law. *Id.* A discussion occurred regarding how stringent the laws in Delaware were, and Mr. Cook assured Mr. McVea that this would not be a problem since his company was familiar with the laws. *Id.*

Plaintiff's employee Stan Keebler testified at his deposition that although he recalled that he and Mr. Cook ran into Mr. McVea at an airport at some point in time, the encounter only lasted for approximately "30 seconds." Keebler Depo. [39-2] at 5-6. When Mr. Keebler was asked if he recalled discussing the Delaware crane project at that meeting, his response was "[a]bsolutely not." *Id.* at 6. Likewise, when asked if they discussed the fact that the Delaware project would be subject to Delaware's Prevailing Wage Law, Mr. Keebler responded, "[a]bsolutely not." *Id.*

Mr. Cook, who was the Manager of Plaintiff's local office in Mississippi during the relevant period, testified that he recalled running into Mr. McVea at the

12

airport in Philadelphia, Pennsylvania, but that their discussion was limited to Mr. Cook seeking assistance from Defendant on behalf of another client in Philadelphia that was having problems with a crane. Cook Depo. [42-3] at 28-29.

Based upon the sworn testimony of these three employees, there clearly exists a genuine issue of material fact. While it tests credulity to believe that either of the parties would agree to an arrangement that would pay employees more than $40.00 below the prevailing wage rate required by the State of Delaware, at this summary judgment stage, the Court may not "weigh the evidence" or make "credibility determinations." *Heinsohn v. Carabin & Shaw*, 832 F.3d 224, 245-46 (5th Cir. 2016).

This conflicting testimonial evidence is substantial and creates a material question of fact for trial. Because Plaintiff's breach of contract claim should proceed to trial, its claim for breach of the duty of good faith and fair dealing should likewise proceed to trial.[9] Defendant's Motion should be denied as to these claims.

2. Plaintiff's unjust enrichment claim

Defendant argues that Plaintiff's unjust enrichment claim should be dismissed because Plaintiff has not denied that the parties entered into a contract. Under Mississippi law, "unjust enrichment applies to situations where there is no legal contract and the person sought to be charged is in possession of money or

---

[9] Plaintiff's Complaint adequately sets forth allegations to support a claim for breach of the duty of good faith and fair dealing as to both the contract itself and Defendant's actions in mailing the alleged settlement check and release to an address other than Plaintiff's counsel's.

13

property which in good conscience and justice he should not retain but should deliver to another." *Beasley*, 192 So. 3d at 332 (quotations omitted). Here, there is no dispute that the parties entered into a contract. Defendant is therefore entitled to summary judgment on this claim.

### III. CONCLUSION

Viewing the evidence in the light most favorable to Plaintiff as the nonmovant, the Court finds that genuine issues of material fact remain on Plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing. Summary judgment on these claims is not appropriate and they should proceed to trial. Defendant is entitled to summary judgment on Plaintiff's unjust enrichment claim.

**IT IS**, **THEREFORE**, **ORDERED AND ADJUDGED** that, Defendant Industrial & Crane Services, Inc.'s Motion [39] for Summary Judgment is **GRANTED IN PART,** and Plaintiff Construction Services, L.L.C.'s claim for unjust enrichment is **DISMISSED WITH PREJUDICE.** Defendant's Motion is **DENIED IN PART** as to Plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing, and these claims will proceed to trial.

**SO ORDERED AND ADJUDGED** this the 18th day of March, 2019.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE